SOUTHWICK, P.J.,
for the Court:
¶ 1. Joseph Miller pled guilty to three counts of uttering a forgery and received a suspended sentence. A few months later the suspension was revoked due to his violation of the terms of the intensive supervision agreement that he had entered. He petitioned the circuit court for post-conviction relief, which was denied. Miller appeals from that denial and argues that his guilty plea was invalid, that he was entitled to notice and a hearing before his suspended sentence could be revoked, and that he was entitled to notice and a hearing before being removed from house arrest. We find no merit to his assignments of error and affirm.
FACTS
¶ 2. On March 23, 1998, Joseph Miller pled guilty in the Circuit Court of Alcorn County to three charges of uttering forgery. Sentencing was held on April 13. Pursuant to a plea bargain, Miller was sentenced on the first charge to a term of *1064 ten years in the custody of the Department of Corrections. The sentencing order provided that Miller would be placed in the intensive supervision/house arrest program for one year. If the Department of Corrections notified the court that Miller successfully completed the program, then the court would place Miller on supervised probation for the remainder of his sentence or until the court “shall alter, extend, terminate or direct the execution” of the sentence. The court in its order stated that it was retaining jurisdiction for one year under section 47-7-47 of the Mississippi code. Miller also was sentenced on the remaining two counts to two terms of ten years to run concurrently. These sentences were suspended upon his future good behavior and violation of no laws. Miller was also ordered to pay restitution on each charge.
¶ 8. In summary, Miller received an un-suspended sentence of ten years on one count, the first year of which was to be served in the intensive supervision program to be followed by probation, if the program were successfully completed. The other two sentences of ten years were suspended and ran concurrently with the first sentence.
¶4. On the day of sentencing, Miller signed an intensive supervision agreement in which he agreed among other things to remain alcohol and drug free during the year of supervision. Miller also signed an intensive supervision resident agreement in which he agreed to keep his residence free of alcohol or any illegal drugs. We note that neither provision was limited to avoiding alcohol-related crimes, such as driving under the influence, but required abstinence from alcohol.
¶ 5. On June 5, 1998, the Corinth Police Department received a complaint that Miller had hit a young woman over the head with a beer bottle. Corinth Police and a house arrest officer responded to the complaint. Miller admitted to the officers that he had consumed two cans of beer. The officers gave Miller an intoxi-lyzer test which revealed that he had a blood alcohol content of .108 %. A warrant for Miller’s arrest was subsequently issued by a Department of Corrections field officer on the grounds that Miller had violated his intensive supervision agreement by testing positive for alcohol. On June 9, 1998, the same corrections officer filed a rule violation report and an “ISP exit form” terminating Miller from the intensive supervision program. On that same day the circuit judge, without a hearing, signed an order approving Miller’s termination from the intensive supervision program and the placement of Miller in whatever facility that the Department of Corrections deemed appropriate where he would serve his original sentence.
¶ 6. On November 17,1998, Miller filed a petition for post-conviction relief. This petition was denied by the circuit court on June 28, 2000. This appeal followed:
DISCUSSION

I. Validity of guilty plea

¶ 7. When Miller appeared in court to plead guilty on the charges of uttering forgeries, the judge asked the State if it had a sentencing recommendation. The prosecutor recommended that Miller be placed in the intensive supervision program for one count and that he receive a ten year sentence for each of the remaining counts to be suspended upon his future good behavior. The trial judge then asked Miller if that was the recommendation that he expected the State to make. Miller responded affirmatively. The trial judge accepted Miller’s pleas and found that they were entered knowingly *1065 and voluntarily and that there was a factual basis for the charges.
¶ 8. Miller’s actual sentencing was deferred until April 13, 1998. On that day the trial court entered a sentencing order stating that Miller’s participation in the intensive supervision program was conditioned upon his “agreeing and complying with all conditions outlined in the intensive supervision agreement.” The sentencing order further provided that, if Miller “should fail to successfully complete the intensive supervision program, the Department of Corrections may, without further orders of this court, place the defendant in whatever Mississippi Department of Corrections facility deemed appropriate to complete said sentence.... ” Also on that date, Miller signed both a general intensive supervision agreement and a resident agreement. It was those agreements that required Miller to abstain from using alcohol or possessing it in his home.
¶ 9. Miller argues that his plea was invalid because the conditions placed on him by the sentencing order were not disclosed to him at the plea hearing. Miller claims that had he known that the Department of Corrections could remove him from the intensive supervision for violation of some of these conditions, that it would have had an impact on his decision to plead guilty. The State asserts that the issue is barred since Miller did not challenge the validity of his plea in his prayer for relief in his petition for post-conviction relief. It is true that the relief requested was to be returned to the intensive supervision program, but Miller did raise the voluntariness issue in the body of his lower court petition. That is sufficient.
¶ 10. Our review of Mississippi law reveals no authority for holding that an accused is entitled to have all the aspects of alternative sentencing programs such as this explained to them in open court. Among other obligations of equal significance and maybe even some identical provisions are the terms of probation, and we find no authority that those must be read aloud in court and the accused asked if he understands each one. Instead, to enter a voluntary plea, the defendant must be informed of the possible maximum and required minimum punishments for the crime charged. He must be notified of certain rights. See URCCC 8.04 A. 3 & 4. The record shows that Miller signed agreements that set out the conditions of his suspended sentence and of his continued participation in the intensive supervision program. These agreements revealed Miller’s obligation to remain free of alcohol. The April 13, 1998 sentencing order states that the Department of Corrections can remove Miller from the intensive supervision program should he fail to complete it successfully. Miller was free to choose not to agree to the terms of the alternative sentencing. Instead Miller signed the agreements. We will not add to the current requirements of in-court explanations to an accused these details of various agreements that might affect the results of the plea.

II. Due Process claims

¶ 11. Miller also alleges that it was error for the trial court to deny him a hearing before revoking his suspended sentence or removing from the intensive supervision program.
¶ 12. What might appear initially of significance on the due process claim is that the circuit court attempted to retain jurisdiction in its sentencing order. The court stated that it was retaining jurisdiction for one year under Miss.Code Ann. § 47-7-47(Rev.2000). We have some sympathy for the argument that if the trial court actually did retain jurisdiction, then any exercise of that jurisdiction might have required a hearing explaining the grounds alleged by the Department of *1066 Corrections for removal. Nonetheless, the Supreme Court has previously found, interpreting a similar order from the same court, that the circuit court cannot retain jurisdiction in this situation. By statute, “full and complete” jurisdiction over the program is lodged with the Department of Corrections classification committee. Babbitt v. State, 755 So.2d 406, 409 (Miss.2000), citing Miss.Code Ann. § 47-5-1003(3) (Rev.2000). In Babbitt, the trial court had overridden the decision of the Department of Corrections because of section 47-7-47. The Supreme Court reversed that decision and found that the cited statute only applies to probation and parole, not this program. Babbitt, 755 So.2d at 409. See also Smith v. State, 766 So.2d 50, 54 (Miss.Ct.App.2000) (when a court attempts to reserve jurisdiction over a defendant for the time he is in the intensive supervision program, jurisdiction still rests solely with the Department of Corrections).
The proper avenue for Miller’s claim was the internal grievance procedure of the Department of Corrections. Lewis v. State, 761 So.2d 922, 924 (Miss.Ct.App. 2000). A petition for post-conviction relief is not available to review such claims. Id. at 923.
¶ 13. THE JUDGMENT OF THE CIRCUIT COURT OF ALCORN COUNTY OF DENIAL OF POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., PAYNE, BRIDGES, THOMAS, LEE, IRVING, AND MYERS, JJ., CONCUR.
CHANDLER, J., NOT PARTICIPATING.